UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

SETH HARRIS,

                            Plaintiff,

      -against-

THE CITY OF NEW YORK, POLICE OFFICER
LINWOOD PLEASANT, shield no. 20488, SERGEANT
NOLAN, and POLICE OFFICER TROIANO,

                         Defendants.

------------------------------------------------------------- x

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ NOV 12 2010 ★
BROOKLYN OFFICE

10 CIV. CV 10 - 5235

**COMPLAINT**

**JURY TRIAL DEMANDED**

**ECF CASE**

BLOCK, J.

GOLD, M.J.

## PRELIMINARY STATEMENT

1. This is a civil rights action to recover money damages arising out of defendants' violation of plaintiff's rights as secured by the Civil Rights Act, 42 U.S.C. Section 1983, and of rights secured by the First, Fourth and Fourteenth Amendments to the United States Constitution, and the laws of the State of New York. Plaintiff, while lawfully present inside of his apartment was subjected to an unlawful entry and search of his apartment. Furthermore, plaintiff was unlawfully detained during the pendency of the search and thereafter arrested and prosecuted without probable cause. Plaintiff was also unlawfully strip searched without reasonable suspicion or probable cause. Plaintiff was deprived of his constitutional and common law rights when the individual defendants unlawfully entered and searched plaintiff's apartment, and caused the unjustifiable strip search, arrest and prosecution of plaintiff.

## JURISDICTION

2. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this court by 28 U.S.C. §§ 1331, 1342 (3) and (4) and the aforementioned statutory and constitutional provisions.

## VENUE

3. Venue is proper for the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391, (a), (b) and (c) and § 1402 (b) because the claims arose in this district.

## PARTIES

4. Plaintiff Seth Harris is a citizen of the United States and a resident of the County of Kings, State of New York.

5. New York City Police Officer Linwood Pleasant, shield number 20488, is and was at all times relevant herein an officer, employee, and agent of the New York City Police Department.

6. On the date of incident, January 14, 2009, Police Officer Linwood Pleasant was assigned to Police Service Area Number Two (2).

7. Police Officer Linwood Pleasant is being sued herein in his individual and official capacity.

8. New York City Police Sergeant Nolan, is and was at all times relevant herein an officer, employee, and agent of the New York City Police Department.

9. On the date of incident, January 14, 2009, Police Sergeant Nolan was assigned to Police Service Area Number Two (2).

10. Police Sergeant Nolan is being sued in his individual and official capacity.

11. New York City Police Officer Troiano is and was at all times relevant herein an officer, employee, and agent of the New York City Police Department.

12. On the date of incident, January 14, 2009, Police Officer Troiano was assigned to Police Service Area Number Two (2).

13. Police Officer Troiano is being sued in his individual and official capacity.

14. At all times relevant herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the New York City Police Department, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the New York City Police Department at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the New York City Police Department and incidental to the lawful pursuit of their duties as officers, employees and agents of the New York City Police Department.

15. Defendant City of New York is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The defendant City of New York assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the New York City Police Department.

## STATEMENT OF FACTS

16. On January 14, 2009 at approximately 11:00 p.m. plaintiff Seth Harris was lawfully present inside of his apartment located at 1474 Lincoln Place, County of Kings, State of New York.

17. On January 14, 2009 plaintiff Seth Harris was the lawful lessee of apartment number 2 located inside of 1474 Lincoln Place, County of Kings, State of New York.

18. The apartment building located at 1474 Lincoln Place, County of Kings, State of New York is a privately owned building and is not owned or operated by the New York City Housing Authority ("NYCHA").

19. On January 14, 2009 the individually named defendant police officers and sergeants were assigned to New York City Housing Bureau Police Service Area # 2.

20. New York City police officers and sergeants assigned to the Housing Bureau are primarily responsible for providing police services to residents, employees, and guests of public housing throughout New York City.

21. On January 14, 2009 at approximately 10:30 p.m. plaintiff was home in his apartment with his aunt, his brother and his friend.

22. On January 14, 2009 plaintiff's aunt lived with him at 1474 Lincoln place and had her own bedroom within the apartment.

23. On January 14, 2009 at approximately 10:30 p.m. somebody began pounding on the front door of the apartment.

24. Plaintiff went to the front door of the apartment, and without opening the door inquired about who was on the other side of the door.

25. The individuals on the other side of the door told plaintiff that they were police officers and asked plaintiff to let them into the apartment.

26. Plaintiff Seth Harris advised the officers that he would not open the door unless they had a warrant.

27. Thereafter, one of the defendant police officers advised plaintiff that they would keep knocking on the door until plaintiff opened the door.

28. The defendant police officers continued to bang loudly on the front door of plaintiff's apartment despite the fact that it was late at night.

29. The defendant police officers' continuous banging on the front door of the apartment made plaintiff's aunt very scared and nervous.

30. At approximately 11:00 p.m. on January 14, 2009 the defendant police officers were still banging on plaintiff's apartment door and plaintiff opened the front door to the apartment.

31. Plaintiff did not invite the defendant officers into the apartment.

32. Nevertheless, as soon as plaintiff opened the front door to his apartment the individually named defendant police officers entered plaintiff's apartment without a warrant, probable cause or exigent circumstances necessitating entry without a warrant.

33. One of the defendant police officers spoke to plaintiff's aunt in her bedroom.

34. Another defendant police officer spoke with plaintiff in the kitchen.

35. Plaintiff gave the defendant police officer his identification and advised the officer that the apartment belonged to him.

36. Another individually named defendant police officer secured plaintiff's brother and his friend in the living room of the apartment.

37. Nobody gave the individually named defendants permission to search plaintiff's apartment.

38. Nevertheless, one of the individually named defendant police officers advised that he was going to look inside the various rooms of the apartment to ensure that there were no other people in the apartment.

39. The police officer entered one of the bedrooms of the apartment, closed the door, and remained inside of the bedroom for several minutes.

40. Plaintiff complained about the fact that the officer was inside the bedroom for such a long period of time and told the officers repeatedly that he had not given the officers permission to enter or search the apartment.

41. When the defendant police officer finally exited the bedroom, the officers told plaintiff's brother and his friend to leave the apartment.

42. Plaintiff's brother and his friend complied with the individually named police officer defendants' orders and exited the apartment.

43. Thereafter, the individually named police officer defendants handcuffed plaintiff and placed him under arrest.

44. There were no drugs, contraband or weapons found in plaintiff's apartment on January 14, 2009.

45. Plaintiff Seth Harris later learned that the individually named defendant police officers lied to the prosecutor and claimed to have found a gun inside a dresser drawer.

46. Plaintiff Seth Harris was transported by the individually named defendant police officers to the Police Service Area # 2 stationhouse where he was held for approximately four (4) hours.

47. Plaintiff was strip searched at the Police Service Area # 2 stationhouse without reasonable suspicion or probable cause to believe that plaintiff was in possession of drugs, weapons, or contraband.

48. Thereafter, plaintiff was transported to Central Booking and held for approximately thirty-eight (38) hours before he was arraigned.

49. The individually named defendant police officers charged plaintiff with criminal possession of a weapon.

50. Plaintiff was arraigned and the Judge set bail in the amount of $750.00.

51. Plaintiff posted bail and was released from custody.

52. Plaintiff appeared in Court approximately fifteen (15) times as a result of the underlying criminal prosecution against him.

53. All charges against plaintiff related to his arrest on January 14, 2009 were dismissed on July 15, 2010.

54. Plaintiff Seth Harris and his aunt were evicted from their apartment as a result of the unlawful search, seizure, and arrest conducted by the individually named defendant police officers on January 14, 2009.

55. It took seven (7) months for plaintiff Seth Harris to find a new apartment after he was evicted.

56. Plaintiff was not able to see his son on a regular basis during the seven (7) month period when he was looking for an apartment.

57. The individually named police officer defendants observed the other individually named police officer defendant violate plaintiff's rights under the Constitution of the United States and did nothing to prevent the unjustifiable entry and search of plaintiff' apartment, the unjustifiable seizure of the occupants of the apartment while the search was being conducted, and the unjustifiable strip search, arrest and prosecution of plaintiff.

58. The individual police officer defendants initiated the prosecution against plaintiff Seth Harris by providing the prosecutor with false statements surrounding the arrest of plaintiff Seth Harris.

59. The malicious prosecution, false arrest, false imprisonment, unlawful strip search of plaintiff by the individually named police officer defendants caused plaintiff to sustain pain and suffering, as well as psychological and emotional trauma.

60. The unlawful entry into plaintiff's apartment, and the unlawful search of plaintiff's apartment by the individually named police officer defendants caused plaintiff to sustain pain and suffering, as well as psychological and emotional trauma.

61. There is a policy, practice or custom within the New York City Police Department, wherein New York City Police Officers illegally strip search individuals without a specific, articulable factual basis supporting a reasonable suspicion or probable cause to believe the individual secreted contraband, evidence, or has a weapon inside a body cavity as required by Sarnicola v. The County of Westchester, 01 Civ. 6078, 2002 U.S. Dist. LEXIS 20305 at *28-29 (S.D.N.Y. October 23, 2002).

62. New York City Police Officers have testified under oath that it is the policy, practice, and custom of the New York City Police Department to conduct strip searches of every

person that is arrested. United States v. Gonzalez, 08 Cr 363 (BSJ), 2009 U.S. Dist. LEXIS 59742 at *7 (S.D.N.Y. March 2, 2009).

63. In fact, the Honorable Barbara S. Jones presiding in the Southern District of New York held that "there is a '[NYPD] departmental policy of strip searching all arrestees without making any assessment of particularized circumstances.'" Gonzalez, 2009 U.S. Dist. LEXIS 59742 at *20 (S.D.N.Y. March 2, 2009).

64. As a result of defendant City of New York and the New York City Police Department's deliberate indifference about the fact that New York City Police Officers routinely conduct strip searches without reasonable suspicion and/or probable cause, there is a pattern, policy, custom or practice of New York City Police Officers strip searching individuals without a factual basis supporting a legal reason to do so.

## FIRST CAUSE OF ACTION

## Violation of Plaintiff's Fourth Amendment and

## Fourteenth Amendment Rights

65. The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs marked 1 through 64 with the same force and effect as if more fully set forth at length herein.

66. Defendants Police Officers Linwood Pleasant, Troiano, and Nolan, who were acting in concert and within the scope of their authority, deprived plaintiff of his rights to be free of unreasonable searches and seizures, pursuant to the Fourth Amendment to the United States Constitution, in that the seizure of plaintiff and the entry into his home were without a warrant, without exigent circumstances, without consent, and without probable cause.

67. Defendants Police Officers Linwood Pleasant, Troiano, and Nolan, who were acting in concert and within the scope of their authority, deprived plaintiff of his rights to be free of unreasonable searches and seizures, pursuant to the Fourth Amendment to the United States Constitution, in that they caused plaintiff to be strip searched without reasonable suspicion or probable cause and imprisoned and criminally prosecuted without probable cause in violation of plaintiff's right to be free of an unreasonable seizure under the Fourth Amendment of the Constitution of the United States and to be free of a deprivation of liberty under the Fourteenth Amendment to the Constitution of the United States.

## SECOND CAUSE OF ACTION

### False Arrest

68. The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs marked 1 through 67 with the same force and effect as if more fully set forth at length herein.

69. The acts and conduct of the defendants constitute false arrest and false imprisonment under the laws of the State of New York and under the Fourth Amendment to the United States Constitution. Defendants intended to confine plaintiff and, in fact, confined plaintiff, and plaintiff was conscious of the confinement. In addition, plaintiff did not consent to the confinement and the confinement was not otherwise privileged.

70. Defendants Police Officers Linwood Pleasant, Troiano, and Nolan were at all times agents, servants, and employees acting within the scope of their employment by the City of New York and the New York City Police Department, which are therefore responsible for their conduct.

71. Pursuant to the Fourth Amendment of the United States Constitution this Court has jurisdiction to hear the federally based claim.

## THIRD CAUSE OF ACTION

## Malicious Prosecution

72. The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs marked 1 through 71 with the same force and effect as if more fully set forth at length herein.

73. The acts and conduct of the defendants constitute malicious prosecution under the laws of the State of New York and under the Fourth Amendment to the United States Constitution.

74. Defendants commenced and continued a criminal proceeding against plaintiff.

75. There was actual malice and an absence of probable cause for the criminal proceeding against plaintiff and for each of the charges for which he was prosecuted.

76. The prosecution and criminal proceedings terminated favorably to plaintiff.

77. Plaintiff was subjected to a post-arraignment deprivation of liberty sufficient to implicate plaintiff's Fourth Amendment rights.

78. Defendants Police Officers Linwood Pleasant, Troiano, and Nolan were at all times agents, servants, and employees acting within the scope of their employment by the City of New York and the New York City Police Department, which are therefore responsible for their conduct.

79. Pursuant to the Fourth Amendment of the United States Constitution this Court has jurisdiction to hear the federally based claim.

## FOURTH CAUSE OF ACTION

### Failure to Intervene

80. The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs marked 1 through 79 with the same force and effect as if more fully set forth at length herein.

81. Defendants had an affirmative duty to intervene on behalf of plaintiff, whose constitutional rights were being violated in the presence of other officers.

82. Defendants failed to intervene to prevent the unlawful conduct described herein.

83. As a result of the foregoing, plaintiff's liberty was restricted for an extended period of time, he was put in fear of his safety, and he was humiliated and subject to unlawful searches, strip searches, and seizures.

84. Defendant Police Officers Linwood Pleasant, Troiano, and Nolan were at all times agents, servants, and employees acting within the scope of their employment by the City of New York and the New York City Police Department, which are therefore responsible for their conduct.

85. Pursuant to the Fourth Amendment of the United States Constitution this Court has jurisdiction to hear the federally based claim.

## ELEVENTH CAUSE OF ACTION

### Unlawful Strip Search

86. The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs marked 1 through 85 with the same force and effect as if more fully set forth at length herein.

87. Plaintiff was searched by defendants without an individualized reasonable suspicion that plaintiff was concealing weapons or other contraband based on a crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest.

88. As a result of the aforementioned conduct of defendants, plaintiff Seth Harris sustained injuries.

## EIGHTH CAUSE OF ACTION

### Municipal Liability under 42 U.S.C. § 1983

89. The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs marked 1 through 88 with the same force and effect as if more fully set forth at length herein.

90. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of defendant City of New York, which is forbidden by the Constitution of the United States.

91. The aforementioned customs, policies, usages, practices, procedures and rules of defendant City of New York and the New York City Police Department included, but were not limited to, illegally strip searching individuals without a specific, articulable factual basis supporting a reasonable suspicion and probable cause to believe the individual secreted contraband, evidence, or has a weapon inside a body cavity as required by Sarnicola v. The

County of Westchester, 01 Civ. 6078, 2002 U.S. Dist. LEXIS 20305 at *28-29 (S.D.N.Y. October 23, 2002), as well as inadequate screening, hiring, retaining, training, and supervising its employees with respect to this issue.

92. The aforementioned customs, policies, usages, practices, procedures and rules of defendant City of New York and the New York City Police Department were the moving force behind the violation of plaintiff's rights as described herein. As a result of the failure of defendant City of New York and the New York City Police Department to properly recruit, screen, train, discipline, and supervise its officers, including the individual defendants, defendant City of New York has tacitly authorized, ratified, and has been deliberately indifferent to, the acts and conduct complained of herein.

93. The foregoing customs, policies, usages, practices, procedures and rules of defendant City of New York and the New York City Police Department were the moving force behind the Constitutional violations suffered by plaintiff as alleged herein.

94. The foregoing customs, policies, usages, practices, procedures and rules of defendant City of New York and the New York City Police Department were the direct and proximate cause of the constitutional violations suffered by plaintiff as alleged herein.

95. As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department, plaintiff was unlawfully strip searched.

96. Defendants collectively and individually, while acting under color of state law were directly and actively involved in violating plaintiff's constitutional rights.

## JURY DEMAND

97. Plaintiff hereby demands trial by jury of all issues properly triable thereby.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for relief as follows:

That the jury find and the Court adjudge and decree that plaintiff James Odom shall recover compensatory damages in the sum of $1,000,000 against the individual defendants and the City of New York, jointly and severally, together with interest and costs; and punitive damages in the sum of $1,000,000 against the individual defendants, jointly and severally.

    a.    That the plaintiff recover the cost of the suit herein, including reasonable attorneys fees pursuant to 42 U.S.C. § 1988.

    b.    That the plaintiff have such other and further relief as the Court shall deem just and proper.

Dated:    New York, New York
             November 11, 2010

By: _____
DAVID M. HAZAN, ESQ
STUART E. JACOBS, ESQ.
JACOBS & HAZAN, LLP
Attorneys for Plaintiff
22 Cortlandt Street, 16th Floor
New York, NY 10007
(212) 419-0363